UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:25-cv-03219-RGK-JDE | Date | December 18, 2025 |
|---|---|---|---|
| Title | *Tigran Gadyan v. Kristi Noem et al* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiff:  Attorneys Present for Defendant:

Not Present  Not Present

**Proceedings:** (IN CHAMBERS) Order Re: Petitioner's *Ex Parte* Application for Preliminary Injunction [4]

## I. INTRODUCTION

On December 1, 2025, Tigran Gadyan ("Petitioner") filed a Petition for Writ of Habeas Corpus and the present *Ex Parte* Application for Temporary Restraining Order ("TRO") against Kristi Noem, Pamela Bondi, Todd Lyons, Jaime Rios, Fereti Semaia, Immigration and Customs Enforcement ("ICE"), and the U.S. Department of Homeland Security ("DHS") (collectively, "Respondents"). (ECF Nos. 1, 4.) Petitioner, a noncitizen who has been subject to a final order of removal since 2007 after entering the United States using a fraudulent entry document, is in ICE custody.

Petitioner seeks the Court's order that Petitioner be immediately released from custody and to enjoin Respondents from re-detaining him absent further order from this Court or the provision of a hearing. On December 3, 2025, the Court denied Petitioner's original *Ex Parte* Application for a TRO. (ECF No. 7.) Petitioner now seeks a preliminary injunction on the same grounds. (*See* ECF Nos. 4, 9.) For the following reasons, the Court **GRANTS** the *Ex Parte* Application for Preliminary Injunction ("Preliminary Injunction").

## II. FACTUAL BACKGROUND

The following facts are alleged in the Petition and the parties' Preliminary Injunction briefing:

Petitioner is a citizen of Armenia. On July 9, 2001, when he was seventeen years old, Petitioner attempted to enter the United States by presenting a fraudulent entry document at the Los Angeles International Airport. After he was referred to secondary inspection, Petitioner disclosed his true identity. Petitioner was paroled into the United States for removal proceedings. Petitioner was detained

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:25-cv-03219-RGK-JDE | Date | December 18, 2025 |
|---|---|---|---|
| Title | *Tigran Gadyan v. Kristi Noem et al* | | |

for approximately two days before he was released into his father's custody upon payment of a $5,000 bond.[1]

On March 21, 2005, an immigration judge ordered Petitioner to be removed. Petitioner appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA"), who affirmed the decision. On November 13, 2007, Petitioner applied for lawful permanent residence, but the application was later denied because he failed to appear for the interview. On January 8, 2008, Petitioner's order of removal became final when the Ninth Circuit issued a mandate in Petitioner's case denying his petition for re-hearing.

Respondents allege that on January 14, 2010, Enforcement and Removal Operations ("ERO") issued Petitioner's mother a Notice to Bond Obligor to Deliver Alien, requiring her to surrender Petitioner on February 16, 2010. However, on February 16, 2010, Petitioner failed to report to ERO. Respondents also assert that on March 4, 2010, ERO issued Petitioner's mother a Form I-323 Notice, notifying her that she violated the bond by failing to present Petitioner at his appointment. Respondents assert these notices in a Deportation Officer's declaration but fail to provide copies of the underlying notices. (*See* Opp'n, L. Palacios Decl., ECF No. 14-1.) Petitioner and his mother contest these facts. Petitioner and his mother assert that his mother did not sign his bond and did not receive a Notice to Bond Obligor to Deliver Alien. (*See* Mot. For Prelim. Inj., T. Gadyan Decl., ECF No. 4-2; Reply, A. Boiadjian Decl., ECF No. 15-1.)

On August 22, 2019, Petitioner plead guilty to identity theft. Otherwise, Petitioner's criminal history includes offenses for driving without a license and reckless driving. Since 2019, Petitioner has married his current wife and has had two children with her.

In December 2024, Petitioner's wife filed a family petition for Petitioner with the United States Citizenship and Immigration Services ("USCIS"), and concurrently Petitioner filed an application to adjust his status. On July 22, 2025, USCIS issued a Notice of Intent to Deny Petitioner's application to adjust his status based on a finding that Petitioner is not statutorily eligible for adjustment. On October 20, 2025, when Petitioner and his wife appeared for an interview with USCIS, Petitioner was arrested by ICE officers in Chatsworth, California. Two days later, USCIS denied Petitioner's application for adjustment of status.

Since October 20, 2025, Petitioner has been detained at an ICE Detention Facility in Adelanto, California. The only notice or communication Petitioner alleges he has had with Respondents was the receipt of a document notifying him that his 90-day custody review will be held on January 19, 2026. On

---

[1] Petitioner claims his father posted his bond and he was released into his father's custody, but Respondents assert Petitioner's mother posted the bond. According to the USCIS document Petitioner attached to his Preliminary Injunction, his father signed the bond release form. (Mot. Prelim. Inj., Ex. C, ECF No. 4-6.) Accordingly, the Court understands Petitioner's father is the bond obligor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:25-cv-03219-RGK-JDE | Date | December 18, 2025 |
|---|---|---|---|
| Title | *Tigran Gadyan v. Kristi Noem et al* | | |

November 3, 2025, a request was submitted to the Consulate of Armenia for Petitioner's travel documents. On November 17, 2025, Petitioner filed a motion to reopen his removal proceedings based on materially changed country conditions in Armenia and eligibility for a new form of relief that was previously unavailable to him. That motion is currently pending with the BIA. On December 2, 2025, the Consulate of Armenia notified ERO that a travel document will be issued for Petitioner. To the Court's knowledge as of this Preliminary Injunction briefing, the Consulate of Armenia has not issued the travel document.

### III.   JUDICIAL STANDARD

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). It is "never awarded as of right." *Id.* at 24. A plaintiff must show: (1) likelihood of success on the merits; (2) likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest (the "*Winter* test"). *Id.* at 20. The Ninth Circuit has adopted an alternative sliding scale approach, in which the elements of the *Winter* test are balanced, "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For instance, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132.

### IV.   DISCUSSION

Petitioner does not challenge the validity of the removal order. Instead, Petitioner asserts that the revocation of his release and continued detention violate the immigration statutes and Fifth Amendment Due Process Clause. Through the Petition and this Motion, he seeks the Court's order that he be immediately released from custody and Respondents be enjoined from re-detaining him, absent an order from this Court or the provision of a hearing. Respondents oppose Petitioner's Motion, arguing that Petitioner failed to satisfy the *Winter* test. The Court turns to the first *Winter* factor.

####    A.   **Likelihood of Success on the Merits**

"Likelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation and internal quotation marks omitted), especially for constitutional claims, *see Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). Petitioner contends he is likely to succeed on the merits of his Petition because his ongoing detention violates (1) his Fifth Amendment substantive and procedural due process rights because he is neither a flight risk nor a danger to the community and his bond was revoked without following statutory procedure requirements;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:25-cv-03219-RGK-JDE | Date | December 18, 2025 |
|---|---|---|---|
| Title | *Tigran Gadyan v. Kristi Noem et al* | | |

and (2) 8 U.S.C. § 1231(a) because the conditions present when he was re-detained do not mandate detention under regulations.

The Court first addresses whether revoking Petitioner's release and his current detention violate his Fifth Amendment substantive and procedural due process rights. The Supreme Court has made it clear that the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Federal immigration law establishes procedures for removing aliens living unlawfully in the United States as well as for determining whether such persons are detained during removal proceedings." *Johnson v. Guzman Chavez*, 594 U.S. 523, 523 (2021).

Accordingly, immigration enforcement agencies' failing to comply with federal immigration law when removing or detaining a noncitizen ultimately violates the noncitizen's due process rights. *See, e.g., Touch v. Noem*, 2025 WL 3278019, at *6 (S.D. Cal. Nov. 25, 2025), *adopted sub nom. CHUNY TOUCH, Petitioner, v. KRISTI NOEM, Sec'y of the Dep't of Homeland Sec., et al., Respondents.*, 2025 WL 3296280 (S.D. Cal. Nov. 26, 2025) ("ICE's failure to comply with 8 C.F.R. § 241.4 and § 241.13 violated Petitioner's due process rights."); *see also Diaz v. Wofford*, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) ("DHS's failure to follow its own procedural regulations may constitute a due process violation.").

Federal immigration laws require detention of removable aliens during a 90-day removal period. 8 U.S.C. § 1231(a)(1)–(2)(A). Continued detention is permitted under § 1231(a)(6), but only for the time "reasonably necessary" to effect removal because indefinite detention would run affront with Fifth Amendment Due Process rights. *Zadvydas*, 533 U.S. at 689–90. The "presumptively reasonable" period of detention after a removal order is prescribed to be six months. *Id.* at 701. After that period, "if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien." *Johnson*, 594 U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 689–701).

Here, Petitioner does not argue that there is no significant likelihood of removal in the reasonably foreseeable future. Instead, Petitioner's due process arguments appear to hinge on whether (1) the revocation of his release followed proper procedures, and (2) his detention is warranted because he is a flight risk or danger to the community. The Court first addresses the former argument concerning revocation of Petitioner's release.

ICE may withdraw approval for "an order of supervision or *other conditions of release*" if the noncitizen violates the conditions of release, the purposes of release have been served, it is appropriate to enforce a removal order or commence removal proceedings against the noncitizen, or the conduct of the noncitizen indicates release is no longer appropriate. 8 C.F.R. § 241.4(l)(1)–(2) (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:25-cv-03219-RGK-JDE | Date | December 18, 2025 |
|---|---|---|---|
| Title | *Tigran Gadyan v. Kristi Noem et al* | | |

Only certain officials have authority to revoke a conditional release, including the Director of ICE or a district director. *See id.* § 241.4(l)(2); *id.* § 1.2.

8 C.F.R. § 241.4(l) provides that, upon revocation of a conditional release, the noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after [re-detention] to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *See also Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1019 (2025) ("[I]n order to revoke conditional release, the Government must provide adequate notice and 'promptly' arrange an 'initial informal interview . . . to afford the alien an opportunity to respond to the reasons for the revocation stated in the notification.'") (quoting 8 C.F.R. § 241.4(l)).

Here, Petitioner was released on bond after entering the United States in 2001, and continued to be subject to this conditional release after his order of removal became final in 2008. Accordingly, Petitioner is subject to "other conditions of release," as referenced in 8 C.F.R. § 241.4(l). Petitioner asserts he was not notified of the reasons for revocation of his release and he did not receive an informal interview. In their Opposition, Respondents argue that release revocation procedure was properly followed because ERO issued Petitioner's mother a Notice to Bond Obligor to Deliver Alien, Petitioner failed to appear for the appointment pursuant to that Notice, and then Petitioner's mother was notified that the bond had been breached.[2] The Court is not persuaded with Respondents' arguments. First, as discussed above in Section II., the parties dispute as to whether Petitioner or his mother received the notices related to his bond. Notably, Respondents did not attach copies of either notice for the Court's consideration to help clarify the contested facts or confirm these notices sufficiently identified the reasons for revocation of Petitioner's release.[3] Second, 8 C.F.R. § 241.4(l) provides that the *noncitizen* must be notified of the reasons for revocation of his release. Respondents do not provide any explanation as to why Petitioner was not directly notified of revocation of his release. Third, Petitioner was not provided an informal interview promptly after re-detention, as required under 8 C.F.R. § 241.4(l), which Respondents do not attempt to rebut.

Accordingly, Respondents failed to follow the required procedures when revoking Petitioner's release. These failures are in clear violation of federal immigration laws and Petitioner's procedural due process rights, rendering Petitioner's current detention unlawful.

---

[2] Respondents also argue that Petitioner failed to show Respondents lack authority to detain him. This is true. In fact, Petitioner concedes that DHS had the authority to detain him after his removal order was finalized in 2008. (*See* Mot. Prelim. Inj. at 16, ECF No. 4-1.) Accordingly, there is no dispute that Respondents have the authority to detain Petitioner.
[3] Additionally, the Court does not understand why ERO would notify Petitioner's mother as the bond obligor when Petitioner's father was the signatory for the bond. (*See* Ex. C, ECF No. 4-6.) These contradicting facts, without evidentiary support, add to the confusion, not only for the Court but also likely for the Petitioner, indicating that notice of revocation of Petitioner's release was not adequately given.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:25-cv-03219-RGK-JDE | Date | December 18, 2025 |
|---|---|---|---|
| Title | *Tigran Gadyan v. Kristi Noem et al* | | |

In their Opposition, Respondents argue that the appropriate injunctive remedy for these procedural deficiencies would not be automatic release from custody but rather an order to remedy the failures. After reviewing decisions of sister courts, the Court is not persuaded and finds immediate release to be the proper remedy. *See, e.g.*, *Delkash v. Noem*, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (collecting cases and granting a noncitizen's preliminary injunction for immediate release because the government did not properly revoke his conditional release).

The two cases Respondents cite to do little to convince the Court otherwise. In those cases, district courts found that the failure to provide a noncitizen with a prompt informal interview did not lead to any actionable injury because the interview would not have led to release. *See Ahmad v. Whitaker*, 2018 WL 6928540 (W.D. Wash. Dec. 4, 2018), *report and recommendation adopted*, 2019 WL 95571 (W.D. Wash. Jan. 3, 2019) (holding the failure to provide an informal interview did not injure the noncitizen because the government had already procured a travel document for the petitioner so his removal was reasonably foreseeable); *Doe v. Smith*, 2018 WL 4696748 (D. Mass. Oct. 1, 2018) (holding that even if a prompt informal interview had been given, it would not have led to an immediate release). In contrast, Petitioner did not receive proper notice of revocation *or* an informal interview, and, to the Court's knowledge, Respondents have not procured a travel document yet. Although correcting these procedural deficiencies may not result in release, Petitioner must nevertheless be afforded notice and an opportunity to respond, and this Court declines to foreclose that opportunity required under due process.

Next, Petitioner puts forward the same reasoning in his arguments that re-detention violated his substantive due process rights and 8 U.S.C. § 1231(a): Petitioner's detention is "unreasonable" because he is not a flight risk nor a danger to the community. Respondents dispute Petitioner's contention, asserting he is a severe flight risk and his criminal history indicates he is a danger to the community. However, while risks of flight and dangerousness are relevant factors as to whether a noncitizen should be released or further detained, they are not central to a release revocation analysis. *See* 8 C.F.R. § 241.4(f) (listing factors to be weighed when considering whether to recommend further detention or release). As referenced above, ICE may withdraw approval for release for several reasons. Moreover, under § 1231(a)(6), continued detention is permitted only for the time "reasonably necessary" to effect removal. *Zadvydas*, 533 U.S. at 689–90. The Supreme Court places the initial burden on the noncitizen to show that detention under § 1231 is no longer reasonable because there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003) (citation omitted).

Petitioner does not argue that his removal cannot be effectuated in the reasonably foreseeable future. The absence of this argument indicates Petitioner cannot satisfy the first *Winter* factor as to these claims. Nevertheless, without notice providing the reasons for revoking Petitioner's release, the Court is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:25-cv-03219-RGK-JDE | Date | December 18, 2025 |
|---|---|---|---|
| Title | *Tigran Gadyan v. Kristi Noem et al* | | |

unable to evaluate whether re-detention is justified. Accordingly, failure to follow the release revocation procedures rendered Petitioner's OSUP revocation and current detention unlawful.

In sum, there is a likelihood that Petitioner will succeed on the merits of his procedural due process claim. The Court moves on to consider the next *Winter* factor.

### B.  Likelihood of Irreparable Harm

In the absence of a preliminary injunction, Petitioner will continue to be unlawfully detained and deprived of his right to due process. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). When the "alleged deprivation of a constitutional right is involved, [as is the case here,] most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (internal quotation omitted). Nevertheless, detention constitutes "a loss of liberty that is . . . irreparable." *Moreno Galvez v. Cuccinelli*, 492 F. Supp. 3d 1169, 1181 (W.D. Wash. 2020), *aff'd in part, vacated in part on other grounds, remanded sub nom. Moreno Galvez v. Jaddou*, 52 F.4th 821 (9th Cir. 2022). Accordingly, the Court finds that Petitioner is likely to suffer irreparable harm in the absence of a preliminary injunction.

### C.  Balance of the Equities and Public Interest

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court agrees with Petitioner that because the revocation of his release was likely inconsistent with federal law, the balance of hardships and public interest factors weigh in favor of a preliminary injunction. *See Delkash*, 2025 WL 2683988, at *6 (holding the same). The preliminary injunction would fulfill Respondents' compelling interest in steady enforcement of immigration laws, including following the processes for revoking release and detaining previously released noncitizens. Accordingly, the Court finds that the last two *Winter* factors weigh in favor of a preliminary injunction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:25-cv-03219-RGK-JDE | Date | December 18, 2025 |
|---|---|---|---|
| Title | *Tigran Gadyan v. Kristi Noem et al* | | |

### V.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner's Motion for a Preliminary Injunction. The Court hereby **ORDERS** that Respondents **immediately release** Petitioner from Respondents' custody, and Respondents are enjoined and restrained from re-detaining Petitioner without notice and opportunity to be heard.[4]

Any future enforcement actions after release must comply with the required procedures.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | JRE/gz |

---

[4] Federal Rule of Civil Procedure 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation omitted). Here, the Court waives the security requirement, as it is unlikely that Respondents will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Delkash*, 2025 WL 2683988, at *6 n.3 (quoting *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996)).